Your Honors, it may please the Court. Alex Hernandez on behalf of the petitioner Mr. Jordany Pierre-Paul, Mr. Nishab on to my left here, your right. He will be handling five minutes of the argument today after I handle the first ten minutes discussing with this Court the jurisdictional issue that's present at the forefront. And Mr. Nish will also be handling rebuttal for us as well. Mr. Pierre-Paul's order of removal is void for the reasoning as follows. Jurisdiction only vests with the Immigration Court whenever a charging document is filed by the Department of Homeland Security with the Immigration Court. A charging document is then defined in the regulations as being an NTA among two other documents. And here is where it gets a little tricky as is the next step is what is an NTA? An NTA is you'll find it referred to in the regulations. You'll see it in 1003.15 and 1003.18. And collectively they do say that a NTA must need only include the time and place and date where practicable. The issue here in this case in our position, Mr. Pierre-Paul's position, is that it is the statutory definition in 1229A that controls over the regulation. Counsel, in order for you to win here today, do you have to win on three different arguments really? First, you must win on that there's a defect in the notice to appear. Second, you have to win on the defect can't be cured through the two-step process. Third, you have to win on the defect is not a non-waivable jurisdictional but is instead a claims processing. You would have to win on all three of those in order to win today. Is that right? Judge, you're right. You've argued my whole case for me here today. I didn't say you would win. I just said you agree that you have the burden. You have to win on all three of those. Yes, Your Honor. That's correct. Okay. And the reason that we believe that we prevail in this case as compared to the government's position, the government argues at page 32 of their brief that consistent with this court's opinion in Gomez-Palacios written by Judge Benavides, he followed other circuits in that case and said that a notice to appear, excuse me, for statutory notice purposes can be later cured when the immigration court itself then sends and serves on the alien the time and place of the removal proceedings. And that is what the government is arguing here today. Before we get to cure, we have to find there's a defect. And five of our sister circuits and the BIA held that Perea is limited to the stop time rule. And we have also at least suggested the same in Mauricio Benitez, haven't we? So why would you be able to disagree with all of the circuits and also our suggestion in the footnote in that case? Judge Elrod, respectfully, I believe it's now two opinions where you've drafted the opinions or written the opinions and there have been footnotes suggesting that Perea is limited to the stop time rule context. But five of our circuits have held specifically that it is. And I think Judge Rosenthal has also written that it is. Yes, Judge Elrod, that's correct. And the reason that I think that we don't need Perea here, Perea is an apposite if we're just looking at the statutory text and the regulations itself. So Perea would be a signpost. You can look to Justice Kennedy's opinion there in the concurrence and say, what do we have there? He says, I don't like what the circuit courts are doing here in terms of deference to Bermuda's Cota. Excuse me, deference to the Bermuda's Cota of that time. And so I think that when we look at whether or not Perea is applicable here, we don't necessarily need it. In Bermuda's Cota, that's sort of how they tackled the issue that we're presenting here today. I believe there's a defect regardless of whether Perea applies in this context. That's correct, Your Honor. Could you elaborate on why you believe there's a defect? Right. So the first defect, of course, the first part of the syllogism would be you have a notice to appear is a charging document. The DHS filing the charging document is what vests the immigration court with jurisdiction. So we have that there. I think really where the catch up or where things get slippery really is where you say, does the definition of a notice to appear in 1229A control over the regulatory definition? And we would argue that it does. And I think to use Perea as persuasive in sort of the common sense approach here, collectively it's a process. So the Department of Homeland Security, the way that it all begins, whenever an alien is suspected of being unlawfully in the United States, the Department of Homeland Security, there's three agencies that can serve notice to appears, and those are Customs and Border Patrol, then you have ICE, and you have USCIS. They then issue a notice to appear to the alien, and then this agency that provided the service of the NTA to the alien then takes that document and is supposed to then file it with the immigration court and pursuant to the regulations promulgated by then Attorney General Janet Reno in 1997, shortly thereafter, whenever the statute was enacted, you have a, that's how the process is supposed to work. It's supposed to be DHS running it through. And the way that the process currently works is you have a two-step process now called into question by Pereira, not dispositively held, but certainly called into question, where the DHS is serving the NTA onto the alien and then filing a defective, we would argue a putative NTA, with the immigration court, and then the immigration court is then sending to the alien a notice of hearing. And the reason... Because it's not practicable given the large volume of the processing and the date, the fact that the hearing dates are not immediately available for the immigration court, so they have done a two-step process. Why isn't that an adequate cure? Your Honor, I would direct this court's attention to the amicus brief submitted by the chairman of the BIA in the Pereira v. Sessions case presented to the court there. It was a description of why the system fell apart. There was once unison between the immigration court and the various DHS entities, such that whenever they were serving the alien with...whenever they, being DHS, were serving the alien with a notice to appear, they had already worked with the immigration court to have a time and place. So it was practicable at one time. Is that when they were having the high volumes of the people coming over that we have now today that are documented? The documented high volume. I'm unsure, Your Honor. I couldn't answer that question. But I do know that, at least in Pereira v. Sessions itself, the court recognized that nearly 100% of the time, the notice to appears did not have the time and place. Why does it matter here? This gets to the third question. The gentleman, your client, appeared for his hearings. He testified. This is not a situation where we have someone being removed who said, I never knew that I was having a hearing. It's not fair to remove me and not give me a chance to have withholding of removal or some other context. Your client was at these hearings, so what difference does it make? I guess that is why it's not jurisdiction...isn't jurisdictional, and so it's reform over substance. Judge Smith, may I respond to the questions here? Judge Elrod. The yellow light just means you have two minutes. Oh, I thought it was red. I apologize. Judge Elrod, I believe that the answer to your question would be that whenever we have statutes and regulations, we need to stick to the plain text of both of them. Does it say it's jurisdictional on its plain text? The regulation does, yes. Jurisdiction best in immigration proceedings commenced when a charging document is filed with the immigration court by the service. But we've recently had some further guidance on claims processing rules versus jurisdictional. Do you have any comment on that? Judge Elrod, your opinion was affirmed recently in front of the Supreme Court, and I would argue that the claim processing rule context here, it's different than your typical, if you do not file something by a certain deadline, then that is a sort of prudential or a claim processing rule. Here you have a process that was clearly contemplated by Congress to go through, and whenever we're going to remove someone from this country, or we suspect that they are here unlawfully, I think that we should be able to at least tell them then and there, and the immigration court should pursue it to the regulation, saying they used words jurisdiction best. If you look at 8 CFR, there's nowhere else you're going to find that term aside from here. So it clearly means something aside from just your regular filing deadline where the court has to interpret, is this a jurisdictional thing? But you agree that substantively he did get process? Yes, Your Honor.  He had a potential to testify. He had a potential to bring someone with him, all of that. Yes, Your Honor, that's correct. All right. Thank you, Mr. Hernandez. Mr. Bond? Good morning, Your Honors, and may it please the court. My name is Nish Bond, and I represent Petitioner Giordani Pierre-Paul. You just heard from my co-counsel, Alex Hernandez, about why the statutory deficient notice to appear was not sufficient to vest jurisdiction with the immigration court. What I'm going to address, Your Honors, is why even if it isn't the case that it wasn't sufficient to vest jurisdiction, that Mr. Pierre-Paul is nonetheless entitled to relief. The legal error that we see in this case really emerged in two large umbrella contexts. One was cancellation of removal context, and the other being the asylum context. I'm going to focus specifically on cancellation of removal and in particular go into Judge Luis's and the BIA's analysis of procedural safeguards that Mr. Pierre-Paul was deemed entitled to. It's a fundamental premise of this country's constitution that people are entitled to due process, and that right extends to people in immigration proceedings as well under Reno v. Flores. Your client had that as conceded by your co-counsel, right? He said your client had due process. I'm not sure when my co-counsel made that statement that he intended to say that in the context of the procedural safeguards that my client was entitled to that he had due process. What did he not get that he should have had by law? Well, if you go into the BIA precedent opinion matter of MAM, when an alien is deemed to be incompetent to meaningfully participate in the proceedings, as evidenced by indicia of incompetency, which Judge Greenstein, the original immigration judge in this case, found, and Judge Luis didn't disturb that holding in the lease, then it's a requirement under the law. This is not a discretionary factor. It's a requirement that certain procedural safeguards are put into place to protect the due process rights of the immigrant, in this case our client, Mr. Pierre Paul. What Judge Greenstein found was that because of Mr. Pierre Paul's medically diagnosed schizoaffective bipolar disorder with psychotic features, that he was indeed incompetent to meaningfully participate in his immigration proceedings and therefore was entitled to procedural safeguards. Now, it later fell onto Judge Luis to decipher what those procedural safeguards would actually be, and she did impose several of them, one being that he would be represented by counsel, one being that counsel would be allowed to ask him leading questions, one being that the subjective fear of his return to Haiti would not be disturbed, and finally a credibility finding and or a truth finding to Mr. Pierre Paul's testimony both at the merits hearing and within his I-589. So what didn't she give? She didn't actually follow through with that credibility analysis and with that truth finding, Your Honor. In particular, I want to focus on Judge Luis's This was a second guessing, I would say, of what was on the record and what Mr. Pierre Paul said at the hearing itself, and it was in relation to a doctor at DHS, Dr. Nancy Hanna, had been told by a CO at the facility that he believed that Mr. Pierre Paul was exaggerating or faking his mental illness symptoms in order to get out of an immigration bind. And on the other hand, at the hearing, Mr. Pierre Paul credibly testified that he had been hospitalized for years because of his mental illness, that he had hundreds of pages of medical records on that point, and even though Judge Luis didn't actually hold against Mr. Pierre Paul's finding of mental illness, she did say that the statements of Dr. Hanna were troubling and eventually militated against a finding of rehabilitation, which is a core element of cancellation of removal. And her reasoning for doing that, Your Honor, is in direct contradiction with the safeguard that she herself imposed under matter of MAM. Matter of MAM is a... I don't want to say it necessarily gives untold discretion to immigration judges, but there's no limits on the level of safeguards that you can impose, and it's entirely up to the judge, based on the indicia of incompetency and based on the particular circumstances of the case, to determine what those safeguards are. You know, the government, in their brief, they say that JRRA, which is another BIA precedent decision, limits the impact of her finding of truth for Mr. Pierre Paul, but I see that I'm almost running out of time. Can I finish my statement, Your Honor? Finish your sentence, if you like. But the footnote to JRRA that the government relies on is just a footnote about subjective truth. And even if we look at truth subjectively here and whether Mr. Pierre Paul believed he was telling the truth, at the hearing where he testified about his mental illness, then Judge Luisa's finding that this was uncredible because of Dr. Hanna's statement itself cuts against that soft truth safeguard. And for that reason— Your initial time has expired now, and you've reserved rebuttal time. Thank you, Mr. Brown. Mr. Bates. Good morning, Your Honors, and may it please the Court. I'm Christopher Bates for the Respondent. I'd like to start with the jurisdictional issue in this case. As Judge Elrod noted, every circuit that has considered the question has rejected Petitioner's argument that the failure of a notice to appear filed with the Immigration Court to include a time and date deprives the Court of jurisdiction. As other circuits have noted, the INA doesn't say anything, in fact, about how jurisdiction vests in the Immigration Court. Thus, other circuits that have considered this question, including the Second, Sixth, Eighth, and Ninth Circuits, have looked to the regulations that the Attorney General has promulgated, which do state when jurisdiction vests in the Court. Those regulations state that jurisdiction vests when a, quote, charging document is filed with the Court. That is 8 CFR 1003.14. Another regulation the Attorney General has promulgated states that a charging document includes a notice to appear, and then a further regulation specifies what this notice to appear to be filed with the Immigration Court must include. It must include information such as the nature of the proceedings, the authority for the proceedings, the charges against the noncitizen, but it does not state that the notice to appear must specify time and place information. Counsel, the BIA has held that appearing at the hearing can also cure. Are you asking us to rely on that reason, too, or are you only asking? What is the perceived path that you prefer that the government favors? So, Your Honor, we would say that there are two avenues available to the Court to decide this issue. The first is to focus on the regulations, to note that the statute does not specify when jurisdiction vests in the Court, thus leaving a statutory gap for the agency to fill, which it has done by issuance of these regulations, so that under Chevron deference is appropriate to the agency under those regulations. So you would say it was defective, but it was cured by the two-step process? Is that what the government wants? So under sort of this first avenue, which I might call the regulatory or direct avenue, Your Honor, satisfying the regulations vests the Court with jurisdiction. The regulations do not require specifying the time and place. So it's not defective. So that's correct, Your Honor. Now, if the Court disagrees with us on that point, there is a second avenue, which is complying with the statutory notice provisions. Which is the two-step process. Which is the two-step process. So what about the other argument that appearing at the hearing, the BIA has relied on that? Are you arguing that today or not? That the appearance itself is another way to cure it. So we have not argued that. You're not arguing that as a method, even though the BIA has taken that position on occasion? No, Your Honor. Okay, so not that position. But the filing of a subsequent notice of hearing. Are you taking a position on whether it's jurisdictional or not? So, as I said, Your Honor, we believe that there is a gap in the statute that leads it to the agency to fill that gap to determine when jurisdiction vests. And that the agency, filling that gap, has used the term jurisdiction. So our position is that it is jurisdictional. So you don't want us to rule that it's not a jurisdictional requirement. You want us to say that it is a jurisdictional requirement. So under the view that the statute leaves a gap for the agency, the agency has filled it, that the agency has used the word jurisdiction. And because the agency uses it, you're saying it's jurisdictional? That is our position, Your Honor. Okay. Now, if you disagree with us on that point and that it's actually the statute that dictates the answer, then that could potentially lead to a different analysis where it would be a claim processing rule. Does the government believe that Pereira is distinguishable, or do you believe that it's not applicable in this context? That even if you apply it, you still have satisfied? What is the government's position regarding that case? So we would say that Pereira is not applicable in this situation. Pereira dealt with a very narrow question, as the Court emphasized multiple times in Pereira. It dealt with the intersection of two statutory provisions, the second of which the stop-time rule expressly says notice to appear under Section 1229A. That phrase under 1229A does not appear in the regulations, and so we would say that Pereira does not apply here. Do you wish to address the issue with regard to the competence and what the immigration judge did or did not hold regarding the credibility of the petitioner? Yes. Yes, Your Honor, thank you. So on the issue of the procedural safeguards with regard to a matter of MAM, the immigration judge did properly apply the Board's decision in MAM. As the immigration judge noted in his decision, the Court imposed several safeguards, including appointing counsel, crediting Mr. Pierpont's narrations of fact, assuming the subjectivity of his fear of returning to Haiti, and also allowing his counsel to ask leading questions. But when the immigration judge said, I find a contradiction or inconsistency with the doctor's testimony and what he's told me is did the immigration judge violate those safeguards? No, Your Honor. So a couple points. So the first point, as we mentioned in our brief or as we argue in our brief, the immigration judge's citation to the JRR case makes clear what was going on here, and I would encourage the Court to take a look at MAM, JRRA, compare those two decisions. If you look at MAM, MAM lists a number of safeguards that the Court could consider imposing, but it doesn't actually mention credibility. MAM does mention appointing counsel but doesn't mention credibility. JRRA, by contrast, is all about credibility. And if I may just read a couple of quotes from JRRA. The Board in JRRA said, given the facts of this case, we also find it appropriate to provide guidance regarding credibility assessments in cases involving aliens who are incompetent or who have serious mental health or cognitive issues that may affect their testimony, particularly with respect to asylum and related claims for relief from removal. And even more to the point, JRRA instructs immigration judges to do exactly what the judge did here. Again, to quote from JRRA, the Board said, where a mental health concern may be affecting the reliability of the applicant's testimony, the immigration judge should, as a safeguard, generally accept that the applicant believes what he has presented, even though his account may not be believable to others or otherwise sufficient to support the claim. The immigration judge should then focus on whether the applicant can meet his burden of proof based on the objective evidence of record and other relevant issues. And that's exactly what the judge did here. The judge credited Mr. Pierre-Paul's testimony, his belief in his testimony, but then went on to consider contrary evidence that was in the record. When the judge said that she was crediting Mr. Pierre-Paul's testimony, that didn't mean that she had to blind herself to the contrary evidence. And, in fact, if you read the immigration judge's decision, the judge doesn't actually say at any point, I disbelieve Mr. Pierre-Paul on this issue. What the judge says or what the judge does is the judge looks at the contrary evidence that was offered. The judge identifies the warrant application, which was inconsistent with the testimony that Mr. Pierre-Paul offered. The judge mentioned this doctor's report in which the doctor had suggested that Mr. Pierre-Paul may have been exaggerating some of his symptoms. The judge doesn't actually say, I therefore disbelieve Mr. Pierre-Paul on these points. The judge merely says, this is concerning, this is troubling. So what the judge was doing was the judge was evaluating or considering the contrary evidence, which is what the judge is to do under matter of JRRA. So it wasn't determining that he was not credible in his testimony. It was just looking at the totality. Yes. I'm sorry. I skipped something that I meant to ask about, about the Seventh Circuit and the two-step process does not work in the Seventh Circuit under Ortiz-Santiago, and they interpret Bermuda's Cota differently. So what do you have to say about that? So we would say, Your Honor, that the Seventh Circuit's decision is not the best or not the correct reading of the regulations and the statutes. The readings of the other circuits on this issue are correct readings. And so we would say in short that the other circuits. Well, I do think there is a difficulty about the two-step process. If the regulation says jurisdiction vests when the government files a notice to appear with the immigration court, if the notice doesn't contain the time and place, it can't be a valid charging document. And so how does the subsequent notice of hearing, which is not listed as a charging document in the regulation, cure the defect? How does that happen metaphysically, so to speak? So I guess just to clarify, Your Honor, you said that a notice to appear that doesn't include time and place is not a charging document. So the first response there would be that that term, charging document, is defined in the regulations. The regulations don't list time and place as necessary on that list. That's the flaw in that situation, that time and place is not really part of charging document. As defined under the regulations, Your Honor. Thank you. Okay. If there are no further questions, Your Honors, we would ask this Court to affirm the decision of the Board. Thank you, Mr. Bates. Mr. Kahn for rebuttal. Thank you, Your Honors. May it please the Court. I only have a couple of issues I want to get into on the jurisdiction point. First of all, the government has pivoted their argument in their brief. They only raised the two-step issue in Bermuda's Cota. They didn't actually argue the regulation argument. But nonetheless, I think even if we do take that argument, it doesn't hold water, and I want to direct the Court back to Ortiz-Santiago. They directly contended with that argument there, and they held that it was absurd because essentially what's happened, and this was kind of brought up at oral argument in the Seventh Circuit too, Congress has created a statutory floor for what a notice to appear is, and that's in 1229. They state that one of the essential characteristics, something that can't ever not be in a notice to appear, is time and place. Now, when the agency comes in and when they bring in their regulation, they basically lower that statutory floor and they say, well, for this specific purpose, which is the vesting of jurisdiction, we're going to say that you don't always need time and place. So what they've taken is the unambiguous words of Congress in 1229 in the statute, and they've reduced that. They've lowered it with this regulatory argument. And for that reason, it doesn't hold water because under the precedent of this Court and numerous other courts in this country, when there's a conflict between a statute and the regulation that interprets that statute, the statutory language has to take hold of it. It has to hold sway. So furthermore, I want to go into the question that Your Honor had about the practical considerations and about we have all these notices to appear which haven't been issued with date and time, and there's this sort of floodgates fear, as I can understand. Pereira actually squarely addressed this fear of practical considerations, and in it Justice Sotomayor says that practical considerations are meritless when we're dealing with the plain text of the statute. And again, the plain text of the statute states that a notice to appear has to have date and time information. It doesn't make that contingent on any other requirement, and it doesn't cabin that. I mean, you know, understanding that if Pereira itself is cabined to the stop-time context, I mean, the statute is not cabined by any stretch of the imagination, and it simply defines notice to appear as including date and time. So in this case, Your Honor, we would like the petitioner to be returned and his case remanded for proceedings that are consistent with his rights. That would entail necessarily receiving a new NTA that has proper date and time proceedings. Even though he already showed up and had an attorney and had all his credibility assumed, he had much more process than most people, didn't he? That might be true, Your Honor. But what we're getting at here is a denial of fundamental procedural rights and the government holding true to what the law tells them to do. The government doesn't get to pick and choose when statutes apply to them. And here the statute was unambiguous on its face. It says that a notice to appear has to have date and time information. And the regulation is similarly clear that no notice, no jurisdiction can ever vest in the immigration court until a valid charging document, here being a notice to appear, is filed with the immigration court. That procedure, that process was nowhere followed by the government in this case. And I think that that mandates a remand of this case for proceedings consistent with Mr. Pieropol's rights. Let me see real quick. Do we have the right to require his return? I mean, do we have the authority if he's committed the crimes that would prevent his return? I'm not certain about that, Your Honor, and that can be something that we address in later briefing to the court if the court deems it necessary. My understanding was that Mr. Pieropol can be returned. I do understand that the criminal alien bar and the discretionary factors that are involved there may present some challenges to that. The number of his crimes are moral turpitude and violent type of crimes. Well, the issue of crimes involving moral turpitude was not an issue that we addressed in this argument, but we can do it really briefly. What had happened with his crimes involving moral turpitude is that he had had two separate CIMTs, one of them being for an attempt at tampering of evidence, and the original immigration judge determined that that was not a crime involving moral turpitude, and Judge Luis, the second immigration judge, revisited that closed decision and determined, may I continue, Your Honor? Thank you. And determined that it could be a crime involving moral turpitude and that because under the evidence that was presented, Mr. Pieropol couldn't sustain his burden, but nor could the government prove their burden, that she was just going to rule against him and determine that it was a crime involving moral turpitude. We request that the case be remanded. Thank you, Your Honor. Thank you, Mr. Vaughn. Your case is under submission. The court will take a brief break.